**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWARD SHINOGEE, <br> by his guardian, Thomas Duffy, <br><br> Plaintiff, <br><br> v. <br><br> ERIC K. FANNING, <br> Secretary of the Army, <br><br> Defendant. | Civil Action No. 15-2261 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Edward Shinogee, by his guardian, Thomas Duffy, seeks a declaratory judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2012), as relief for his challenge to a 2004 decision by the Army Board for Correction of Military Records (the "Board") that returned without action the plaintiff's request for reconsideration of his effort to upgrade his military discharge characterization. See Amended Complaint for Declaratory Relief ("Am. Compl.") ¶¶ 13, 20–24, 28, 36–39. Currently before the Court is the Defendant's Motion to Dismiss ("Def.'s Mot.") and the Plaintiff's Motion for Oral Argument ("Pl.'s Mot. for Conf."). Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant the defendant's motion to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and deny as moot the plaintiff's request for oral argument.

---

[1] In addition to the filings previously identified, the Court considered the following submissions in reaching its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."); (2) the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"); (3) the defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss ("Def.'s Reply"); and (4) the Plaintiff's Notice of Supplemental Authority ("Pl.'s Notice").

I.      BACKGROUND

On April 12, 1985, the plaintiff, a Private Second Class member of the United States Army, Am. Compl. ¶ 1, was "admitted as a psychiatric inpatient after [being] diagnosed with 'Schizophreniform Disorder' . . . [and] was prescribed anti-psychotic medication," id. ¶ 8. Nine days later, the plaintiff was referred for court-martial for possession and intent to distribute marijuana. Id. ¶ 10. After the plaintiff "went AWOL[—absent without leave—]from the Army's mental hospital from May 9 to 19[,] . . . the AWOL charge was added to the drug charges." Id. The Army's Sanity Board determined that the plaintiff (1) was criminally accountable for the drug offenses, which had allegedly occurred before the plaintiff was diagnosed with Schizophreniform Disorder, (2) "was not accountable for the AWOL," and (3) "was now competent to stand trial." Id. ¶ 12. On August 2, 1985, the plaintiff "submitted a request for an administrative discharge in lieu of trial." Id. ¶ 13. The Army approved the plaintiff's request and discharged him on August 23, 1985, with a service characterization that his discharge was other than honorable. Id.

In early 1986, the plaintiff was diagnosed with schizophrenia. Id. ¶ 15. Although he was awarded disability benefits from the Social Security Administration based on his schizophrenia diagnosis, id., ¶ 16, the Veterans' Administration "repeatedly denied [the plaintiff] service-connection and disability compensation for the schizophrenia, and other disabilities, because of the disqualifying [other than honorable discharge]," id. ¶ 17. In 2003, however, the Board of Veterans' Appeals determined that the plaintiff was eligible for benefits after the Veterans' Administration amended its regulations regarding "its 'insanity' exception entitling dishonorably discharged veterans to disability compensation benefits." Id. ¶¶ 25, 27.

The plaintiff filed an application for reconsideration with the Board in 2003 to upgrade his discharge characterization and to receive disability benefits based on the Board of Veterans' Appeals' decision. Id. ¶ 28. In response, on December 16, 2004, the Board sent the plaintiff a letter stating that "no further action may be taken on [his] request" because (1) the Board received the plaintiff's request more than one year after the Board's prior action, and (2) the Board had previously reconsidered the matter. See id.

In June 2004, the Veterans' Administration had "adjudicated that [the plaintiff] was incompetent to handle his financial and personal affairs," id. ¶ 29, and from 2004 through 2012, the plaintiff experienced a cycle of homelessness, drug addiction, criminal activity, and hospitalization, id. ¶¶ 29–34; see also Pl.'s Opp'n, Exhibit ("Ex.") B (Declaration of Thomas Duffy ("Duffy Declaration") ¶¶ 2–3. Consequently, the plaintiff was involuntarily "committed to the Division of Mental Health" because of "a mental illness" by a Utah state court for most of 2011 and through approximately the first half of 2012. See Am. Compl. ¶¶ 33–34; see also Pl.'s Opp'n, Ex. A (excerpts from the plaintiff's Veterans' Administration medical records and mental health court commitment records ("Plaintiff's Records") at 5, 12, 13, 15, 17, 21); id., Ex. B (Duffy Declaration) ¶ 3. On May 23, 2012, Thomas Duffy, the plaintiff's brother, was appointed as the plaintiff's conservator and guardian. Def.'s Reply, Appendix ("App.") at A32–33; Pl.'s Opp'n, Ex. B (Duffy Declaration) ¶ 1.[2] The plaintiff's brother, on the plaintiff's behalf, then filed a complaint in this Court on December 29, 2015, see Complaint at 1, and filed an Amended Complaint on the plaintiff's behalf on April 14, 2016, see Am. Compl. at 1.

---

[2] In his declaration, Duffy states that he became the plaintiff's guardian and conservator "[i]n early 2013," Pl.'s Opp'n, Ex. B (Duffy Declaration) ¶ 4, but the Utah state court orders appointing Duffy as guardian and conservator are dated May 23, 2012, see Def.'s Reply, App. at A32–33.

3

## II.     STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction,'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, a district court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Because "it is presumed that a cause lies outside [a federal court's] limited jurisdiction," Morrow, 723 F. Supp. 2d at 76 (alteration in original) (quoting Kokkonen, 511 U.S. at 377), the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the district court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [over] the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, a district court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion' for failure to state a claim."

Grand Lodge, 185 F. Supp. 2d at 13–14 (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1998)).

### III. ANALYSIS

28 U.S.C. § 2401(a) provides, in relevant part, that a "civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." However, the statute states that "[t]he action of any person under legal disability . . . at the time the claim accrues may be commenced within three years after the disability ceases." Id. Section 2401(a) applies to an APA claim, which "'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987) (quoting 28 U.S.C. § 2401(a)). In Spannaus, the District of Columbia Circuit noted that, "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." Id. at 55; see also P & V Enters. v. U.S. Army Corps of Eng'rs, 516 F.3d 1021, 1026 (D.C. Cir. 2008) (affirming Spannaus). As a result, § 2401(a) is "not subject to waiver or equitable tolling." Appalachian Voices v. McCarthy, 989 F. Supp. 2d 30, 42 (D.D.C. 2013) (Walton, J.) (quoting John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 140 (2008) (Stevens, J., dissenting)).

Section 2401(a) "originated in the Tucker Act," Howard v. Pritzker, 775 F.3d 430, 436 (D.C. Cir. 2015), which contains a nearly identical provision regarding legal disability, see 28 U.S.C. § 2501 ("A petition on the claim of a person under legal disability . . . at the time the claim accrues may be filed within three years after the disability ceases."); see also Havens v. Mabus, 759 F.3d 91, 96 (D.C. Cir. 2014) (noting that 28 U.S.C. § 2501 is "the Tucker Act's

5

jurisdictional, six-year statute of limitations"). Like § 2401(a), § 2501 is a "jurisdictional," "more absolute, kind of limitations period." John R. Sand & Gravel Co., 552 U.S. at 134.

The defendant argues that the plaintiff's amended complaint should be dismissed because it is time-barred under § 2401(a). See Def.'s Mem. at 1; Def.'s Reply at 1. The parties agree that the plaintiff's claim accrued on December 16, 2004, when the Board denied his request for reconsideration, and thus the six-year statute of limitations expired, unless properly tolled for some reason, on December 16, 2010. See Pl.'s Opp'n at 4; Def.'s Mem. at 6. The plaintiff argues that he "was under a continuing legal disability" "from mid-2010 to early 2013," and thus his action was timely filed pursuant to § 2401(a)'s legal disability provision because it was filed "within three years in 2015." Pl.'s Opp'n at 4. The defendant argues in response that the plaintiff has not demonstrated a continuous legal disability from December 2004, when his cause of action accrued, until December 2012, three years before he filed his Complaint, as required by § 2401(a), see Def.'s Mem. at 7–9; Def.'s Reply at 2–5.[3]

The legal disability provision of the Tucker Act has been extensively interpreted by the United States Court of Federal Claims ("Court of Federal Claims") and its predecessor courts, the United States Claims Court and the United States Court of Claims, while there is a dearth of case law interpreting the nearly identical legal disability provision of § 2401. Accordingly, the Court considers the Tucker Act legal disability case law instructive in its analysis here.

The Court of Federal Claims has concluded that "[l]egal disability is 'a condition of mental derangement which renders the sufferer incapable of caring for his property, of

---

[3] The defendant also argues that even if the plaintiff established a continuous legal disability dating from December 2004, that disability was cured in May 2012, when Duffy was appointed as his guardian, and thus the statute of limitations expired three years later in May 2015. See Def.'s Reply at 5–7. The Court need not consider this argument because, as discussed infra, it concludes that the defendant did not establish a continuous legal disability from the time his cause of action accrued until within three years of when his complaint was filed.

transacting business, of understanding the nature and effects of his [or her] acts, and of comprehending his [or her] legal rights and liabilities.'" Tansil v. United States, 113 Fed. Cl. 256, 264 (2013) (quoting Goewey v. United States, 612 F.2d 539, 544 (Ct. Cl. 1979)). Specifically, that Court has held that the legal disability "must impair the claimant's access to the court . . . [and] must have prevented the [claimant] from comprehending his or her legal rights" in order to toll the statute of limitations period. Hyde v. United States, 85 Fed. Cl. 354, 358 (2008). The claimant carries the burden of overcoming the presumption of "sanity and competency," Goewey, 612 F.2d at 544, and must present evidence of the existence of the legal disability, Hyde, 85 Fed. Cl. at 358. Evidence that the claimant sought legal relief in the courts or from administrative agencies demonstrates lucidity. See Dean v. United States, 92 Fed. Cl. 133, 150 (2010) (declining to find that the plaintiff suffered from a legal disability because the "plaintiff exercised his legal right to seek relief from the [Air Force Board for Correction of Military Records] on multiple occasions"); Hyde, 85 Fed. Cl. at 358–59 (finding that the plaintiff "comprehended his legal rights" because he "repeatedly sought action from the Government regarding his allegedly lost patents" during the statute of limitations period); Goewey, 612 F.2d at 545 (concluding that the plaintiff did not suffer from a legal disability because he filed habeas corpus petitions to be released from a psychiatric hospital, engaged in efforts to secure benefits from the Veterans' Administration, and defended himself against criminal prosecutions).

Furthermore, the Court of Federal Claims has concluded that to toll the statute of limitations, the legal disability must exist "at the time when the claim accrued rather than arising some time thereafter and [the claimant must show] that he suffered from the disability continually during the period in which the statute is to be tolled." Tansil, 113 Fed. Cl. at 264

(quoting Ware v. United States, 57 Fed. Cl. 782, 788 (2003)).  And in that Court's view, if the disabled claimant regains legal capacity by experiencing a period of lucidity, the statute of limitations recommences and continues to run even if the claimant's legal disability reemerges. Id.

In this case, the plaintiff alleges that he was legally disabled because of mental illness only "from mid-2010 to early 2013."  Pl.'s Opp'n at 4; see also id. at 9 ("From 2010 to 2013 [the plaintiff] experienced an acute crisis in mental illness with grave impairments in functionality."); id. at 10 ("There is certainly no 'overwhelming consensus of psychiatric testimony' that [the plaintiff] had the mental capability from 2010 until 2013 to make rational decisions or pursue legal actions to protect his interests." (quoting Goewey, 612 F.2d at 545)).  As a result, the plaintiff's legal disability argument fails because this Court agrees with the Court of Federal Claims that the plaintiff "must show that his disability existed at the time when the claim accrued."  Tansil, 113 Fed. Cl. at 264 (emphasis added) (quoting Ware, 57 Fed. Cl. at 788); see also Bennett v. United States, 36 Fed. Cl. 111, 113 (1996) (finding that the claimant failed to establish a legal disability because his claim accrued in 1988, but the plaintiff only alleged a disability in 1994).  As noted above, the parties agree that the claim accrued on December 16, 2004, when the Board denied the plaintiff's request for reconsideration.  See Pl.'s Opp'n at 4; Def.'s Mem. at 6.  Because the plaintiff does not allege that he was disabled on that date, and presents proof only that his disability commenced over five years thereafter, the Court concludes that the plaintiff was not suffering from a continuous legal disability[4] from the date his claim

---

[4] The Court concludes that, even if the plaintiff did allege that he was legally disabled in December 2004, he has failed to demonstrate that the disability was continuous "during the period in which the statute [wa]s to be tolled." Tansil, 113 Fed. Cl. at 264 (quoting Ware, 57 Fed. Cl. at 788).  The plaintiff submitted a claim to the Veterans' Administration in 2006 requesting a competency evaluation so that he could "be [his] own payee," Def.'s Reply, App. at A23, which demonstrates that the plaintiff was lucid and comprehended his legal rights during this period, see Dean, 92 Fed. Cl. at 150; Hyde, 85 Fed. Cl. at 358–59.

accrued through December 2012, three years before the plaintiff filed his Complaint. See 28 U.S.C. § 2401(a) (requiring the claimant to file his action "within three years after the disability ceases"). Accordingly, the plaintiff's claim is untimely under 28 U.S.C. § 2401(a).[5]

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff failed to establish that he suffered from a legal disability that warrants tolling the statute of limitations of 28 U.S.C. § 2401(a). Thus, the Court must grant the Defendant's Motion to Dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and deny as moot the Plaintiff's Motion for Oral Argument.

**SO ORDERED** this 13th day of January, 2017.[6]

REGGIE B. WALTON
United States District Judge

---

[5] The plaintiff asserts in his Amended Complaint that equitable tolling should apply, see Am. Compl. ¶ 39, and reiterates this argument in the Plaintiff's Notice of Supplemental Authority, which was filed on July 8, 2016, after the authorized briefing period had concluded, see Pl.'s Not. at 1. The Court declines to consider the plaintiff's equitable tolling argument because, even if he had raised this argument in his opposition to the defendant's motion to dismiss, which he did not, see Pl.'s Opp'n at 4–10, § 2401(a) is "not subject to waiver or equitable tolling," Appalachian Voices, 989 F. Supp. 2d at 42–43 (quoting John R. Sand & Gravel Co., 552 U.S. at 140 (Stevens, J., dissenting)); see also In re: Chaplaincy, __ F. Supp. 3d __, __, Case No. 1:07-mc-269 (GK), 2016 WL 541126, at *3 (D.D.C. Feb. 9, 2016) ("[C]ourts in this circuit have continuously held that because [§] 2401(a) is jurisdictional, they lack the power to toll its limitations period.").

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.